UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

ANDREW H. PARKS,

               Plaintiff,

v.

RANDY REWERTS et al.,

               Defendants.

_____/

Case No. 1:25-cv-394

Honorable Jane M. Beckering

## **OPINION**

This is a civil rights action under 42 U.S.C. § 1983 brought by a state prisoner. The Court has granted Plaintiff leave to proceed *in forma pauperis* in a separate Order. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Further, under Rule 21 of the Federal Rules of Civil Procedure, a court may at any time, with or without motion, add or drop a party for misjoinder or nonjoinder. Fed. R. Civ. P. 21. Applying this standard regarding joinder, the Court will drop as misjoined Defendants Terry Wilkins, S. Kowalski, Tracie Hill, Eric Stromer, Unknown Majurin, Unknown Wilson, and any AMF employees who are mentioned in the complaint but not named as parties.

The Court will dismiss Plaintiff's claims against the misjoined Defendants without prejudice. With regard to remaining Defendants Randy Rewerts, James Eerdsman, Tyler Rydahl, Unknown Cook, Unknown Edlinger, Unknown Schultz, and any DRF employees mentioned in the complaint but not named as parties, the Court will dismiss Plaintiff's complaint for failure to state a claim.

## Discussion

### I.    Factual Allegations

Plaintiff is currently incarcerated by the Michigan Department of Corrections (MDOC) at the Baraga Correctional Facility (AMF) in Baraga, Baraga County, Michigan. The events about which he complains occurred there and at the Carson City Correctional Facility (DRF) in Carson City, Montcalm County, Michigan. Plaintiff sues the following DRF personnel: Warden Randy Rewerts, Assistant Residential Unit Manager James Eerdsman, Correctional Officers Tyler Rydahl and Unknown Cook, Sergeant Unknown Schultz, and staff member Unknown Edlinger. Plaintiff also sues the following AMF personnel: Warden Terry Wilkins, Assistant Residential Unit Managers S. Kowalski, Eric Stromer, and Unknown Wilson, mail room staff member Tracie Hill, and Lieutenant Unknown Majurin.

Plaintiff's complaint is akin to a laundry list of complaints regarding numerous events that occurred at DRF and at AMF. Plaintiff's first allegation chronologically is that on December 10, 2023, while incarcerated at DRF, Plaintiff spoke to non-party Assistant Residential Unit Manager Ward about receiving a pillow because Plaintiff did not receive one upon arrival. (Compl., ECF No. 1, PageID.9.) Ward told Plaintiff that they were out of pillows. (*Id.*) Later that day, during yard time, Plaintiff saw another inmate he had been transferred with receive a pillow. (*Id.*) Plaintiff approached the officers' station to ask for a pillow, but was told that there were not any. (*Id.*) From January 6th through the 8th, Plaintiff spoke to Ward, but he refused to resolve the issue and refused

2

to give Plaintiff a grievance form. (*Id.*) Instead, Ward told Plaintiff to "get the hell outta his office." (*Id.*)

On January 6, 2024, non-party Officer White issued Plaintiff a false misconduct. (*Id.*, PageID.8.) Plaintiff claims that unit officers then shook down his cell and planted a false substance in a bottle so that they could write Plaintiff a misconduct for substance abuse. (*Id.*)

On January 7, 2024, Plaintiff sent a kite to non-party Residential Unit Manager Smith about the lack of a pillow, but she did not respond. (*Id.*) Plaintiff also spoke to non-party Assistant Residential Unit Manager Jones. (*Id.*) Plaintiff stated that he wanted to be transferred because he did not feel safe at DRF. (*Id.*)

Plaintiff was denied his psychiatric callouts on January 11 and 17, 2024. (*Id.*, PageID.9.)

On January 11, 2024, during rounds, Defendant Edlinger stopped at Plaintiff's cell and called Plaintiff a "n*****." (*Id.*, PageID.11 (asterisks added).) Plaintiff goes on to state that during a grievance interview, Defendant Schultz falsified the investigation summary on the grievance. (*Id.*)

On January 12, 2024, non-party Officer Rothley placed a weapon in Plaintiff's area of control. (*Id.*, PageID.10.) Plaintiff was taken to segregation by non-party Officers Gregory and Parks. (*Id.*) Plaintiff was released later that day and taken to housing unit 500. (*Id.*) Plaintiff believes that Officer Rothley planted the weapon because he was responsible for packing Plaintiff's property. (*Id.*) Plaintiff spoke to numerous officers, including Defendants Rydahl and Cook, about his missing property (a fan, legal work, shower shoes, padlock, and hygiene items). (*Id.*)

On January 12 and 13, 2024, Plaintiff asked several non-party officers for grievance forms, but his requests were "ignored or neglected." (*Id.*, PageID.8.)

On January 15, 2024, Plaintiff asked to speak to Defendant Cook about a "property concern." (*Id.*) Plaintiff alleges that he was "rud[e]ly cut off" and called "n*****." (*Id.* (asterisks added).) Defendant Cook told Plaintiff that he did not care about Plaintiff needing his property. (*Id.*)

The next day, Plaintiff was called out for an appointment with non-party psychiatrist Thompson. (*Id.*) After the appointment, Plaintiff went to the officers' station to ask for grievance forms, but his request was denied. (*Id.*) Defendant Rydahl and non-party Officer Allen walked Plaintiff to his cell. (*Id.*) On the way, Defendant Rydahl called Plaintiff a "n*****" and told Plaintiff that he would have a hard time at DRF. (*Id.* (asterisks added).) That same day, Plaintiff went to see Defendant Eerdsman about his concerns regarding missing property and hygiene supplies. (*Id.*) Plaintiff was kicked out of Defendant Eerdsman's office. (*Id.*)

On January 20, 2024, non-party Sergeant Ridout approached the "cage" that Plaintiff was in and said, "Gay n***** boy I wish you luck don't drop the soap." (*Id.*, PageID.11. (asterisks added).) Later that day, non-party Lieutenant Schmidt approached the cage because Plaintiff was yelling that he needed to use the restroom. (*Id.*) Lieutenant Schmidt told Plaintiff, "Look here if I was your bunkie I'[d] make you get on your knees and make you fix it." (*Id.*) Plaintiff filed a Prison Rape Elimination Act (PREA) complaint about this comment. (*Id.*)

As of January 21, 2024, Plaintiff was in a new housing unit at DRF. (*Id.*, PageID.12.) He asked non-party Officers Stacey and Wright for a pillow; they told Plaintiff to "shut the f*** up motherf***er [you are] not getting shit." (*Id.* (asterisks added).) When third shift came in, non-party Officer Schaub gave Plaintiff a pillow. (*Id.*)

On February 1, 2024, after Plaintiff left his housing unit to go to the law library, Defendant Rydahl conducted a shakedown and dumped trash on Plaintiff's bunk "in retaliation." (*Id.*) When

Plaintiff returned and saw his cell, he asked to speak to non-party Sergeant Parks. (*Id.*) Parks looked at the cell and walked away. (*Id.*) Non-party Officer Collins also looked, laughed, and said, "That's what the n***** get[s] for filing grievances." (*Id.* (asterisks added).)

On February 6, 2024, while "doing legal mail," Plaintiff tried to address an issue and was told to "shut up before being sent back to cell." (*Id.*) Plaintiff responded that he was on loss of privileges status and asked how he could speak about his issues if his kites were not responded to. (*Id.*) The Assistant Resident Unit Manager sent Plaintiff back to his cell. (*Id.*)

On February 16, 2024, "during legal mail," Defendant Eerdsman skimmed Plaintiff's outgoing legal mail and placed it in the "shed" and nothing was resolved. (*Id.*, PageID.13.) Plaintiff believes Defendant Eerdsman did so because he saw Plaintiff writing to a lawyer to request help on a civil suit. (*Id.*) Defendant Eerdsman told Plaintiff, "Try again Monday n***** stupid f***." (*Id.* (asterisks added).)

At some point between February 16, 2024, and April 24, 2024, Plaintiff was transferred to AMF. (*Id.*, PageID.14.) On April 24, 2024, Plaintiff did not receive his two hours of yard time. (*Id.*, PageID.14.) Plaintiff claims that as a result, he was not able to call his family and was unable to use the JPay system. (*Id.*) Plaintiff spoke to Defendant Stromer about the issue that same day. (*Id.*) Defendant Stromer also denied Plaintiff's outgoing legal mail to a law firm. (*Id.*)

On May 13 and 21, 2024, non-party Officer Velmer denied Plaintiff an "incentive TV" through the Prisoner Benefit Fund. (*Id.*) Plaintiff claims that he was eligible for the TV and that the denial of such constitutes retaliation and discrimination. (*Id.*)

On May 30, 2024, non-party Officer Wyatt brought Plaintiff legal mail, and Plaintiff noticed that the back of the mail was opened. (*Id.*) He believes that Defendant Hill was responsible for the opening. (*Id.*)

On July 12, 2024, Plaintiff received a false misconduct after camera footage showed Plaintiff placing a laundry bag on his food slot for a porter to collect. (*Id.*) Plaintiff appears to suggest that he was written a misconduct for "holding [the] slot." (*Id.*) Plaintiff alleges that he was placed in segregation for 72 hours as a result. (*Id.*)

On August 8, 2024, Plaintiff filed a grievance after his mail from the Gratiot County courthouse was noted as regular mail instead of legal mail. (*Id.*, PageID.15.) Plaintiff requested that Defendant Hill be discharged from her position. (*Id.*)

On October 27, 2024, non-party Officer Lorendo issued a false misconduct to Plaintiff. (*Id.*) According to Plaintiff, Lorendo used derogatory language towards him. (*Id.*)

On November 22, 2024, Plaintiff spoke to non-party Sergeant Borgen about "the depriving of heat," but she refused to address the issue. (*Id.*, PageID.17.) Plaintiff claims that at no time did any staff member check the temperature of his cell. (*Id.*)

On November 25, 2024, Defendant Kowalski refused to process Plaintiff's outgoing mail to the NAACP and the Legal Action of Wisconsin as legal mail. (*Id.*, PageID.16.) On December 3, 2024, Plaintiff asked Defendant Kowalski why his outgoing mail was being denied. (*Id.*) Plaintiff believes that Defendant Kowalski refused to address the issue because of Plaintiff's "race, sexual orientation, national origin[,] color[, and] pending lawsuits." (*Id.*)

On December 14, 2024, Plaintiff spoke to non-party Officer Holly about the temperature in his cell and being deprived of heat. (*Id.*, PageID.17.) Plaintiff claims that Holly refused to resolve the issue. (*Id.*)

On December 30, 2024, non-party Sergeant Watt issued a misconduct charging Plaintiff with insubordination after Plaintiff wrote a grievance about Watt not wearing a body camera while passing out legal mail. (*Id.*, PageID.15.) Plaintiff claims his legal mail had been tampered with that

day. (*Id.*) Defendant Wilkins requested that Plaintiff be placed in administrative segregation. (*Id.*) Plaintiff claims further that Defendant Wilkins did not hold Defendant Watt accountable in the response to Plaintiff's grievance about the issue. (*Id.*, PageID.16.)

On January 15, 2025, Defendant Kowalski issued Plaintiff a misconduct. (*Id.*, PageID.18.) Plaintiff claims that she did so to retaliate against Plaintiff for the grievances he submitted about her. (*Id.*)

On January 16, 2025, non-party prison counselor Frankie refused to process Plaintiff's outgoing mail to a legal organization as legal mail. (*Id.*, PageID.16.) That same day, an unknown counselor refused to interview Plaintiff regarding an allegedly false misconduct. (*Id.*, PageID.18.) Plaintiff claims further that the counselor did not ask Plaintiff if he wanted a hearing investigator. (*Id.*)

On January 27, 2025, Defendant Majurin allegedly read Plaintiff's incoming legal mail and denied Plaintiff his incoming legal mail. (*Id.*)

Based upon the foregoing, the Court construes Plaintiff's complaint to assert claims under the First, Fourth, Eighth, and Fourteenth Amendments to the United States Constitution. Plaintiff also references violations of MDOC policy throughout his complaint. Plaintiff seeks compensatory, punitive, and nominal damages. (*Id.*, PageID.20.) He also appears to seek unspecified injunctive relief. (*Id.*, PageID.23.)

## II.    Misjoinder

### A.    Joinder

Federal Rule of Civil Procedure 20(a) limits the joinder of parties in a single lawsuit, whereas Federal Rule of Civil Procedure 18(a) limits the joinder of claims. Rule 20(a)(2) governs when multiple defendants may be joined in one action:

> [p]ersons . . . may be joined in one action as defendants if: (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action."

Fed. R. Civ. P. 20(a)(2). Rule 18(a) states: "A party asserting a claim . . . may join, as independent or alternative claims, as many claims as it has against an opposing party." Fed. R. Civ. P. 18(a).

Courts have recognized that, where multiple parties are named, as in this case, the analysis under Rule 20 precedes that under Rule 18:

> Rule 20 deals solely with joinder of parties and becomes relevant only when there is more than one party on one or both sides of the action. It is not concerned with joinder of claims, which is governed by Rule 18. Therefore, in actions involving multiple defendants Rule 20 operates independently of Rule 18. . . .

> Despite the broad language of Rule 18(a), plaintiff may join multiple defendants in a single action only if plaintiff asserts at least one claim to relief against each of them that arises out of the same transaction or occurrence and presents questions of law or fact common to all.

7 Charles Allen Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1655 (3d ed. 2001), *quoted in Proctor v. Applegate*, 661 F. Supp. 2d 743, 778 (E.D. Mich. 2009), *and Garcia v. Munoz*, No. 08-1648, 2008 WL 2064476, at *3 (D.N.J. May 14, 2008); *see also United States v. Mississippi*, 380 U.S. 128, 142–43 (1965) (discussing that joinder of defendants is permitted by Rule 20 if both commonality and same transaction requirements are satisfied); *UWM Student Ass'n v. Lovell*, 888 F.3d 854, 863 (7th Cir. 2018) ("Unrelated claims against different defendants belong in different suits." *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007). A district judge necessarily has considerable discretion in applying Rules 18 and 20. The rules 'operate[ ] independently' because Rule 20 contains limitations that Rule 18 does not, and the Rule 20 inquiry comes first.").

Therefore, "a civil plaintiff may not name more than one defendant in his original or amended complaint unless one claim against each additional defendant is transactionally related to the claim against the first defendant and involves a common question of law or fact." *Proctor*,

661 F. Supp. 2d at 778 (internal quotation marks omitted). When determining if civil rights claims arise from the same transaction or occurrence, a court may consider a variety of factors, including, "the time period during which the alleged acts occurred; whether the acts . . . are related; whether more than one act . . . is alleged; whether the same supervisors were involved, and whether the defendants were at different geographical locations." *Id.* (citation omitted).

Permitting improper joinder in a prisoner civil rights action undermines the purpose of the PLRA, which was to reduce the large number of frivolous prisoner lawsuits that were being filed in the federal courts. *See Riley v. Kurtz*, 361 F.3d 906, 917 (6th Cir. 2004). The Seventh Circuit has explained that a prisoner like plaintiff may not join in one complaint all of the defendants against whom he may have a claim, unless the prisoner satisfies the dual requirements of Rule 20(a)(2):

> Thus multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2. Unrelated claims against different defendants belong in different suits, not only to prevent the sort of morass that [a multi]-claim, [multi]-defendant suit produce[s] but also to ensure that prisoners pay the required filing fees—for the Prison Litigation Reform Act limits to 3 the number of frivolous suits or appeals that any prisoner may file without prepayment of the required fees. 28 U.S.C. § 1915(g) . . . .
>
> A buckshot complaint that would be rejected if filed by a free person—say, a suit complaining that A defrauded the plaintiff, B defamed him, C punched him, D failed to pay a debt, and E infringed his copyright, all in different transactions— should be rejected if filed by a prisoner.

*George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007); *see also Brown v. Blaine*, 185 F. App'x 166, 168–69 (3d Cir. 2006) (allowing an inmate to assert unrelated claims against new defendants based on actions taken after the filing of his original complaint would have defeated the purpose of the three strikes provision of PLRA).

Under these circumstances, to allow Plaintiff to proceed with improperly joined claims and Defendants in a single action would permit him to circumvent the PLRA's filing fee provisions

and allow him to avoid having to incur a "strike" for purposes of § 1915(g), should any of his claims be dismissed as frivolous or for failure to state a claim. Courts are therefore obligated to reject misjoined claims like Plaintiff's. *See Owens v. Hinsley*, 635 F.3d 950, 952 (7th Cir. 2011).

Here, Defendant Edlinger is the first Defendant mentioned in Plaintiff's factual allegations.[1] (*See* Compl., ECF No. 1, PageID.11.) Plaintiff alleges that on January 11, 2024, Defendant Edlinger called him a "n*****." (*Id.* (asterisks added).)

Considering whether other Defendants are properly joined under Rule 20 and whether other claims are properly joined under Rule 18, the Court has read Plaintiff's allegations indulgently and concludes that Plaintiff's claims against all other named DRF Defendants (Defendants Rewerts, Eerdsman, Rydahl, Cook, Schultz, and any DRF employees mentioned in the complaint but not named as defendants) are transactionally related to the claim against Defendant Edlinger and involve a common question of law or fact, particularly because Plaintiff suggests that all actions taken by the DRF Defendants were acts of retaliation in response to Plaintiff's grievances and complaints. *See Cook v. Huss*, No. 22-1440, 2022 WL 17836544, at *2 (6th Cir. Dec. 19, 2022).

Plaintiff's allegations against the DRF Defendants, however, are transactionally *unrelated* to Plaintiff's allegations against the AMF Defendants (Defendants Wilkins, Kowalski, Hill, Stromer, Majurin, and Wilson, as well as any AMF employees mentioned in the complaint but not named as parties). There are no questions of law and fact that are common between Plaintiff's

---

[1] The analysis of joinder must start somewhere. The Court recognizes that when taken in chronological order, Plaintiff's first factual allegation concerns non-party Assistant Residential Unit Manager Ward. However, given that Plaintiff did not include Ward in either the caption of his complaint or his list of Defendants, the Court declines to accept the factual allegations against Ward as the foundation for the Court's joinder analysis.

By accepting the factual allegations against the first-named Defendant as the foundation for the joinder analysis, the Court is considering the issue of joinder of parties as Plaintiff has presented it in his complaint.

claims against the DRF Defendants, on one hand, and Plaintiff's claims against the AMF Defendants. Although Plaintiff indicates that he believes the AMF Defendants retaliated against him as well, Plaintiff sets forth no *facts* from which this Court could infer that the alleged retaliation at AMF is in any way transactionally related to the alleged retaliation by the DRF Defendants.

Accordingly, Plaintiff's claims against the DRF Defendants are transactionally related and involve common questions of law and fact. However, Plaintiff's claims against the AMF Defendants involve issues that are transactionally unrelated to, and do not share common questions of law or fact with, the claims against the DRF Defendants. The fact that all of these events occurred while Plaintiff has been incarcerated at various MDOC facilities does not show that the claims arise out of the same transaction or occurrence. Accordingly, the Court concludes that Plaintiff's claims against the DRF Defendants are properly joined, but that Plaintiff has improperly joined the AMF Defendants to this action.

### B.    Remedy

Because the Court has concluded that Plaintiff has improperly joined Defendants Wilkins, Kowalski, Hill, Stromer, Majurin, Wilson, and AMF employees mentioned in the complaint but not named as parties to this action, the Court must determine an appropriate remedy. Under Rule 21 of the Federal Rules of Civil Procedure, "[m]isjoinder of parties is not a ground for dismissing an action." Fed. R. Civ. P. 21. Instead, Rule 21 provides two remedial options: (1) misjoined parties may be dropped on such terms as are just; or (2) any claims against misjoined parties may be severed and proceeded with separately. *See Grupo Dataflux v. Atlas Glob. Grp., L.P.*, 541 U.S. 567, 572–73 (2004) ("By now, 'it is well settled that Rule 21 invests district courts with authority to allow a dispensable nondiverse party to be dropped at any time . . . .'" (citation omitted)); *DirecTV, Inc. v. Leto*, 467 F.3d 842, 845 (3d Cir. 2006); *see also Michaels Bldg. Co. v. Ameritrust*

11

*Co., N.A.*, 848 F.2d 674, 682 (6th Cir. 1988) ("[D]ismissal of claims against misjoined parties is appropriate."). "Because a district court's decision to remedy misjoinder by dropping and dismissing a party, rather than severing the relevant claim, may have important and potentially adverse statute-of-limitations consequences, the discretion delegated to the trial judge to dismiss under Rule 21 is restricted to what is 'just.'" *DirecTV*, 467 F.3d at 845.

At least three judicial circuits have interpreted "on such terms as are just" to mean without "gratuitous harm to the parties." *Strandlund v. Hawley*, 532 F.3d 741, 745 (8th Cir. 2008) (quoting *Elmore v. Henderson*, 227 F.3d 1009, 1012 (7th Cir. 2000)); *see also DirecTV*, 467 F.3d at 845. Such gratuitous harm exists if the dismissed parties lose the ability to prosecute an otherwise timely claim, such as where the applicable statute of limitations has lapsed, or the dismissal is with prejudice. *Strandlund*, 532 F.3d at 746; *DirecTV*, 467 F.3d at 846–47.

Plaintiff brings this action under 42 U.S.C. § 1983. For civil rights suits filed in Michigan under § 1983, the statute of limitations is three years. *See* Mich. Comp. Laws § 600.5805(2); *Carroll v. Wilkerson*, 782 F.2d 44 (6th Cir. 1986) (per curiam); *Stafford v. Vaughn*, No. 97-2239, 1999 WL 96990, at *1 (6th Cir. Feb. 2, 1999). The statute of limitations begins to run when the aggrieved party knows or has reason to know of the injury that is the basis of his action. *Collyer v. Darling*, 98 F.3d 211, 220 (6th Cir. 1996). Plaintiff's allegations against these Defendants relate to events that occurred in 2024 and 2025. (*See generally* Compl., ECF No. 1.) Plaintiff's complaint provides no indication that the statute of limitations has or will run on Plaintiff's claims against the misjoined Defendants. Therefore, Plaintiff has provided no basis for this Court to conclude that he would suffer gratuitous harm if his claims against the misjoined Defendants are dismissed without prejudice.

Accordingly, the Court exercises its discretion under Rule 21 and drops Defendants Wilkins, Kowalski, Hill, Stromer, Majurin, Wilson, and AMF employees mentioned in the complaint but not named as parties because they are misjoined. The Court dismisses Plaintiff's claims against these individuals without prejudice to the institution of a new, separate lawsuit or lawsuits.[2]

## III.    Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the

---

[2] If Plaintiff wishes to proceed with his claims against one or more of the misjoined Defendants, he may do so by filing new civil action(s) on the form provided by this Court, *see* W.D. Mich. LCivR 5.6(a), and paying the required filing fees or applying in the manner required by law to proceed *in forma pauperis*. As fully discussed in this Opinion, Plaintiff is cautioned that he must limit all future actions to Defendants and claims that are transactionally related to one another. The Court may, in its discretion and without further warning, dismiss any future complaint, or part thereof, filed by Plaintiff that contains claims that are misjoined. Plaintiff is advised that simply because separate and discrete events occurred during Plaintiff's incarceration at a particular correctional facility does not mean that all claims arising out of these events are properly joined.

court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has

not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2));

*see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal*

plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C.

§§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right

secured by the federal Constitution or laws and must show that the deprivation was committed by

a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr.*

*Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating

federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to

identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271

(1994).

### A.    Claims Against DRF Non-Parties

As set forth above, Plaintiff has asserted numerous factual allegations regarding several

DRF employees who are mentioned in the complaint but not named as Defendants, all of which

could be construed to assert First, Eighth, and Fourteenth Amendment claims against those non-

parties. However, the Court notes that these individuals are not identified as Defendants in either

the case caption of the complaint or the section of the complaint where Plaintiff lists the Defendants

in this suit. (Compl., ECF No. 1, PageID.1, 2–5.)

Federal Rule of Civil Procedure 10(a) requires that a plaintiff "name all of the parties" in

"[t]he title of the complaint." Fed. R. Civ. P. 10(a). Further, this Court has previously concluded

that "[o]nly those individuals and entities identified in the caption of the complaint are properly

considered defendants in an action, regardless of the complaint's other contents or allegations."

*Jones v. Smith*, No. 1:10-cv-568, 2012 WL 726665, at *1 (W.D. Mich. Feb. 1, 2012), *R & R*

14

*adopted*, 2012 WL 726621 (W.D. Mich. Mar. 6, 2012); *see also Brown v. Mich. Dep't of Corr.*, No. 1:22-cv-16, 2022 WL 2900888, at *1 n.2 (W.D. Mich. Jul. 22, 2022) (concluding that corrections officers identified as defendants in a particular count of the complaint, but not named in the caption or in the form complaint "list of parties" were not parties to the action). Accordingly, any intended claims against the DRF non-party individuals will be dismissed for failure to state a claim upon which relief may be granted.

### B.    Claims Against Defendant Rewerts

The only time that Plaintiff mentions Defendant Rewerts is in his list of Defendants. (Compl., ECF No. 1, PageID.2.) Plaintiff alleges that Defendant Rewerts, as Warden at DRF, allowed staff members "to create a hostile environment, use racial slurs," violate policy, retaliate, and violate Plaintiff's Eighth Amendment rights "after receiving multiple valid warnings of complaints of treatment." (*Id.*)

Government officials, however, may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004).

The United States Court of Appeals for the Sixth Circuit has set forth the minimum required to constitute active conduct by a supervisory official:

> "[A] supervisory official's failure to supervise, control or train the offending individual is not actionable *unless* the supervisor either encouraged the specific incident of misconduct or in some other way directly participated in it." *Shehee*,

15

> 199 F.3d at 300 (emphasis added) (internal quotation marks omitted). We have interpreted this standard to mean that "at a minimum," the plaintiff must show that the defendant "at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers."

*Peatross v. City of Memphis*, 818 F.3d 233, 242 (6th Cir. 2016) (quoting *Shehee*, 199 F.3d at 300);

*see also Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995).

Here, Plaintiff fails to allege any facts suggesting that Defendant Rewerts encouraged or condoned the conduct of his subordinates, or authorized, approved, or knowingly acquiesced in the conduct. Plaintiff's conclusory allegations of supervisory responsibility are insufficient to show that Defendant Rewerts was personally involved in the alleged violations of Plaintiff's constitutional rights. *See, e.g., Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers*, 368 F.3d at 888. Moreover, to the extent Plaintiff faults Defendant Rewerts for not responding to his complaints or grievances, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999).

Accordingly, for the foregoing reasons, Plaintiff's claims against Defendant Rewerts are properly dismissed.

## C.    First Amendment Claims

The Court has construed Plaintiff's complaint to assert various First Amendment claims against Defendants Eerdsman, Rydahl, Cook, Edlinger, and Schultz.

### 1.    Retaliation

Throughout his complaint, Plaintiff suggests that Defendants acted as they did to retaliate against Plaintiff for his grievances and complaints.

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). To set forth

16

a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to show that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

With respect to the first element of a First Amendment retaliation claim, an inmate has a right to file "non-frivolous" grievances against prison officials on his own behalf, whether written or oral. *Maben v. Thelen*, 887 F.3d 252, 265 (6th Cir. 2018); *Mack v. Warden Loretto FCI*, 839 F.3d 286, 298–99 (3d Cir. 2016) ("[The prisoner's] oral grievance to [the prison officer] regarding the anti-Muslim harassment he endured at work constitutes protected activity under the First Amendment."). Here, Plaintiff references submitting numerous grievances and making verbal complaints regarding various conditions he experienced at DRF. Thus, at this stage, Plaintiff has alleged sufficient facts to suggest that he engaged in protected conduct.

To establish the second element of a retaliation claim, a prisoner-plaintiff must show adverse action by a prison official sufficient to deter a person of ordinary firmness from exercising his constitutional rights. *Thaddeus-X*, 175 F.3d at 396. The adverseness inquiry is an objective one and does not depend on how a particular plaintiff reacted. The relevant question is whether the defendant's conduct is "*capable* of deterring a person of ordinary firmness"; the plaintiff need not show actual deterrence. *Bell v. Johnson*, 308 F.3d 594, 606 (6th Cir. 2002). Finally, to satisfy the third element of a retaliation claim, Plaintiff must allege facts that support an inference that the alleged adverse action was motivated by the protected conduct.

Even assuming that the various actions attributed to Defendants Eerdsman, Rydahl, Cook, Edlinger, and Schultz constitute adverse action, Plaintiff merely alleges the ultimate fact of retaliation without providing any supporting facts. Such "conclusory allegations of retaliatory motive 'unsupported by material facts'" do not state a claim under § 1983. *Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005) (citation omitted); *see Murray v. Unknown Evert*, 84 F. App'x 553, 556 (6th Cir. 2003) (holding that in complaints screened pursuant to 28 U.S.C. § 1915A, "[c]onclusory allegations of retaliatory motive with no concrete and relevant particulars fail to raise a genuine issue of fact for trial" (internal quotation marks omitted)); *Lewis v. Jarvie*, 20 F. App'x 457, 459 (6th Cir. 2001) ("[B]are allegations of malice on the defendants' parts are not enough to establish retaliation claims [that will survive § 1915A screening]." (citing *Crawford-El v. Britton*, 523 U.S. 574, 588 (1998))). Nowhere in Plaintiff's complaint does he set forth facts from which the Court could infer that these individuals were aware of Plaintiff's grievances and protected conduct and took the acts they did because of that conduct. Plaintiff supports his claims with only his speculative assertions that these individuals retaliated against him. Plaintiff's First Amendment retaliation claims, therefore, are properly dismissed for failure to state a claim.

### 2.    Access to the Courts

Plaintiff also mentions that his legal work was taken from him and destroyed, and that Defendant Eerdsman refused to process a piece of outgoing legal mail. Plaintiff's complaint, therefore, can be construed to assert First Amendment claims regarding interference with his access to the courts.

It is well established that prisoners have a constitutional right of access to the courts. *Bounds v. Smith*, 430 U.S. 817, 821 (1977). The right of access to the courts prohibits prison officials from erecting barriers that may impede the inmate's access to the courts. *See Knop v. Johnson*, 977 F.2d 996, 1009 (6th Cir. 1992).

To state a viable claim for interference with his access to the courts, a plaintiff must show "actual injury." *Lewis v. Casey*, 518 U.S. 343, 349 (1996); *see also Talley-Bey v. Knebl*, 168 F.3d 884, 886 (6th Cir. 1999); *Knop*, 977 F.2d at 1000. In other words, a plaintiff must plead that the defendants actions have hindered, or are presently hindering, his efforts to pursue a nonfrivolous legal claim. *Lewis*, 518 U.S. at 351–53; *see also Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996). The Supreme Court has strictly limited the types of cases for which there may be an actual injury:

> *Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

*Lewis*, 518 U.S. at 355. "Thus, a prisoner's right to access the courts extends to direct appeals, habeas corpus applications, and civil rights claims only." *Thaddeus-X*, 175 F.3d at 391. Moreover, the underlying action must have asserted a non-frivolous claim. *Lewis*, 518 U.S. at 353; *accord Hadix v. Johnson*, 182 F.3d 400, 405 (6th Cir. 1999) (*Lewis* changed actual injury to include requirement that action be non-frivolous).

In addition, the Supreme Court squarely has held that "the underlying cause of action . . . is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002) (citing *Lewis*, 518 U.S. at 353 & n.3). "Like any other element of an access claim, the underlying cause of action and its lost remedy must be addressed by allegations in the complaint sufficient to give fair notice to a defendant." *Id.* at 415.

Plaintiff's complaint is wholly devoid of facts regarding any underlying cause of action that was hindered by Defendants. Likewise, Plaintiff's complaint is wholly devoid of any facts

regarding any lost remedy because of the loss of his legal work. To the extent that Plaintiff is attempting to assert First Amendment access to the courts claims based upon the handling of his grievances, he cannot. For example, Plaintiff suggests that Defendant Schultz falsified an investigation summary in response to Plaintiff's grievance concerning Defendant Edlinger's use of a racial slur. Defendants' actions (or inactions) in response to Plaintiff's grievances have not barred Plaintiff from seeking a remedy for his complaints. *See Cruz v. Beto*, 405 U.S. 319, 321 (1972). Indeed, Plaintiff's ability to seek redress is underscored by his *pro se* invocation of the judicial process. *See Azeez v. DeRobertis*, 568 F. Supp. 8, 10 (N.D. Ill. 1982).

Even if Plaintiff had been improperly prevented from filing a grievance, his right of access to the courts to petition for redress of his grievances (i.e., by filing a lawsuit) cannot be compromised by his inability to file institutional grievances, and he therefore cannot demonstrate the actual injury required for an access-to-the-courts claim. *See, e.g.*, *Lewis*, 518 U.S. at 355 (requiring actual injury); *Bounds*, 430 U.S. at 821–24. The exhaustion requirement only mandates exhaustion of *available* administrative remedies. *See* 42 U.S.C. § 1997e(a). If Plaintiff were improperly denied access to the grievance process, the process would be rendered unavailable, and exhaustion would not be a prerequisite for initiation of a civil rights action. *See Ross v. Blake*, 578 U.S. 632, 640–44 (2016) (reiterating that, if the prisoner is barred from pursuing a remedy by policy or by the interference of officials, the grievance process is not available, and exhaustion is not required); *Kennedy v. Tallio,* 20 F. App'x 469, 470–71 (6th Cir. 2001).

Accordingly, for the foregoing reasons, any intended First Amendment access to the courts claims will be dismissed.

### 3.   Outgoing Legal Mail

Plaintiff alleges that on February 16, 2024, "during legal mail," Defendant Eerdsman skimmed Plaintiff's outgoing legal mail and placed it in the "shed" and nothing was resolved. (Compl, ECF No. 1, PageID.13.)

In *Sallier v. Brooks*, 343 F.3d 868, 873–74 (6th Cir. 2003), the Sixth Circuit considered multiple potential sources of protection for legal mail, including the Sixth Amendment right to counsel, the First Amendment right to petition for redress of grievances, the First Amendment right of access to the courts, and the prisoner's general interest in protecting the attorney-client privilege. Simply calling a particular correspondence "legal mail," however, does not implicate each and every one of those protections. For example, the Sixth Amendment right to counsel applies only to criminal prosecutions. *Wolff v. McDonnell*, 418 U.S. 539, 576–77 (1974) ("As to the Sixth Amendment, its reach is only to protect the attorney-client relations in the criminal setting . . . ."); *see also Stanley v. Vining*, 602 F.3d 767, 770 (6th Cir. 2010). There are no facts alleged in Plaintiff's complaint that support the inference that Plaintiff was attempting to send legal mail to an attorney related to a criminal proceeding. Likewise, as discussed *supra*, Plaintiff has not alleged any facts supporting an inference that the mail in question bore any relationship to Plaintiff's direct appeal of his criminal convictions, a habeas corpus application, or a civil rights claim.

Further, the ability of a prisoner "to receive materials of a legal nature" related to his legal rights and concerns itself implicates a fundamental right. *Kensu v. Haigh*, 87 F.3d 172, 174 (6th Cir. 1996). Courts have, therefore, extended protections to prisoners' legal mail that do not exist for general mail. However, not all outgoing mail constitutes "legal mail," and "the question of what constitutes 'legal mail' is a question of law." *Sallier*, 343 F.3d at 871. The Michigan Administrative Code defines "legal mail" as correspondence with courts, attorneys, public officials, the office of the legislative corrections ombudsman, MDOC's central office staff, and

21

staff of the institution in which the prisoner is incarcerated. *See* Mich. Admin. Code R. 791.6603(7) (Nov. 15, 2008). Moreover, "the determination of whether mail is considered legal mail depends not only on the nature of the sender, but on the appearance of the mail [as well as] the nature of the contents." *Longmire v. Mich. Dep't of Corr.*, 454 F. Supp. 3d 702, 708 (W.D. Mich. 2020) *aff'd* No. 20-1389, 2021 WL 5352809, at *2 (6th Cir. Jun. 9, 2021) (noting that "the mail must be 'properly and clearly marked as legal materials.' . . . . [W]hile the envelope states that it is confidential, it was not, as the district court held, 'clearly marked as legal mail,' nor did it have the Commission's name on it or other salient information, such as 'the name and bar number of a licensed attorney'").

Plaintiff's allegations fall far short in both respects. Simply referencing "legal mail" is insufficient to invoke these protections. Plaintiff's complaint is wholly devoid of facts from which the Court could infer that the mail that Defendant Eerdsman refused to accept and process was outgoing legal mail. In any event, with respect to outgoing mail, "isolated instances of interference with prisoners' mail" may not rise to the level of a constitutional violation under the First Amendment. *See Johnson v. Wilkinson*, No. 98-3866, 2000 WL 1175519 (6th Cir. Aug. 11, 2000) ("This random and isolated interference with Johnson's mail did not violate his constitutional rights." (citation omitted)); *see also Gardner v. Howard*, 109 F.3d 427, 431 (8th Cir. 1997) (holding that an "isolated incident, without any evidence of improper motive resulting interference with [the inmate's] right to counsel or to access to the courts, does not give rise to a constitutional violation" (citations omitted)); *Okoro v. Scibana*, 63 F. App'x 182, 184 (6th Cir. 2003) (stating that "Okoro was only able to provide one specific incident where he allegedly did not receive the full contents of a letter from his wife," and concluding that "[s]uch a random and isolated incident is insufficient to establish a constitutional violation" (citation omitted)); *cf. Colvin v. Caruso*, 605

F.3d 282, 293 (6th Cir. 2010) (citing *Johnson* for the holding that "isolated interference" with prisoners' rights may not rise to the level of a First Amendment violation). Indeed, the Sixth Circuit recently relied upon *Colvin* to confirm that a single isolated event of tampering with legal mail "does not rise to the level of a constitutional violation." *See Smith v. Goostrey*, No. 23-1025, 2023 WL 5024659, at *3 (6th Cir. Aug. 4, 2023).

Accordingly, for the foregoing reasons, Plaintiff cannot maintain a First Amendment claim regarding Defendant Eerdsman's isolated incident of refusing to accept Plaintiff's legal mail. Accordingly, this claim is also properly dismissed.

### D.    Fourth Amendment Claim

Plaintiff alleges that on February 1, 2024, Defendant Rydahl conducted a shakedown of Plaintiff's cell and left trash on Plaintiff's bunk. (Compl., ECF No. 1, PageID.12.) The Court has construed Plaintiff's complaint to assert a Fourth Amendment claim premised upon this shakedown.

In *Hudson v. Palmer*, 468 U.S. 517 (1984), the United States Supreme Court considered and rejected a Fourth Amendment claim based upon a prison official searching a prisoner's cell and destroying some of his legal papers in the process. *Id.* at 519, 535. The prisoner claimed that the prison official's conduct constituted an unreasonable search and seizure of his property, in violation of the Fourth Amendment. *Id.* at 530. The Supreme Court disagreed.

First, the Supreme Court recognized that while prisoners are not beyond the reach of the Constitution, "curtailment of certain rights is necessary, as a practical matter, to accommodate a 'myriad of institutional needs and objectives' of prison facilities, . . . chief among which is internal security." *Id.* at 523–24 (internal citation omitted). The Supreme Court then determined that the official's search of the prisoner's cell did not violate the Fourth Amendment because "society is not prepared to recognize as legitimate any subjective expectation of privacy that a prisoner might

have in his prison cell." *Id.* at 526. According to the Court, "[a] right of privacy in traditional Fourth Amendment terms is fundamentally incompatible with the close and continual surveillance of inmates and their cells required to ensure institutional security and internal order." *Id.* at 527–28. For similar reasons, the Supreme Court held that the Fourth Amendment "does not protect against seizures in a prison cell." *Id.* at 528 n.8. According to the Court, "[p]rison officials must be free to seize from cells any articles which, in their view, disserve legitimate institutional interests." *Id.*

Under the circumstances set forth in Plaintiff's complaint, and applying *Hudson*, the Fourth Amendment did not prohibit the shakedown of Plaintiff's cell. Accordingly, any purported Fourth Amendment claim against Defendant Rydahl will be dismissed.

### E.    Eighth Amendment Claims

The Court has construed Plaintiff's complaint to assert various Eighth Amendment claims against Defendants Eerdsman, Rydahl, Cook, Edlinger, and Schultz.

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous," nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345–46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600–01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment

within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954. "Routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347). As a consequence, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.*

In order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479–80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)) (applying deliberate indifference standard to medical claims); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims). The deliberate-indifference standard includes both objective and subjective components. *Farmer*, 511 U.S. at 834; *Helling*, 509 U.S. at 35–37. To satisfy the objective prong, an inmate must show "that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. Under the subjective prong, an official must "know[] of and disregard[] an excessive risk to inmate health or safety." *Id.* at 837. "[I]t is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Id.* at 842. "It is, indeed, fair to say that acting or failing to act with deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk." *Id.* at 836.

### 1.    Verbal Harassment

Plaintiff alleges that on several separate occasions, Defendants Eerdsman, Rydahl, Cook, and Edlinger referred to Plaintiff as "n*****." While the Court does not condone the use of such language, and while such language is certainly unprofessional, allegations of verbal harassment by prison officials toward an inmate do not constitute punishment within the meaning of the Eighth Amendment. *Ivey*, 832 F.2d at 955. Additionally, allegations of verbal harassment do not rise to

the level of unnecessary and wanton infliction of pain proscribed by the Eighth Amendment. *See id.*; *see Johnson v. Dellatifa*, 357 F.3d 539, 546 (6th Cir. 2004) (holding that harassment and verbal abuse do not constitute the type of infliction of pain that the Eighth Amendment prohibits). Accordingly, any Eighth Amendment claims against Defendants Eerdsman, Rydahl, Cook, and Edlinger premised upon verbal harassment are properly dismissed.

### 2.    Shakedown of Cell

As noted above, Plaintiff contends that Defendant Rydahl conducted a shakedown of Plaintiff's cell on February 1, 2024, and left trash on Plaintiff's bunk. While the Court is sympathetic to Plaintiff's frustration over the situation, such conduct does not rise to the level of cruel and unusual punishment that violates the Eighth Amendment. *See, e.g.*, *Roper v. Johnson*, No. 2:19-cv-2061, 2020 WL 224601, *2-3 (N.D. Ohio Jan. 15, 2020) (dismissing prisoner's claim that search of his cell and destruction of his property constituted cruel and unusual punishment); *Williams v. Washington*, No. 2:18-cv-144, 2018 WL 6190497, *12 (W.D. Mich. Nov. 28, 2018) (concluding that frequent cell searches and pat downs did not rise to the level of an Eighth Amendment violation). Accordingly, any purported Eighth Amendment claim against Defendant Rydahl premised upon this shakedown is properly dismissed be dismissed.

### 3.    Issues Regarding Hygiene Items and Pillow

Throughout his complaint, Plaintiff avers that he was deprived of hygiene items, and that Defendants Rydahl, Cook, Edlinger, Eerdsman, and Schultz ignored his complaints. Plaintiff also mentions that he did not receive a pillow until non-party Officer Schaub gave him one.

Denials of hygiene items for short periods of time constitute temporary inconveniences that do not rise to the level of an Eighth Amendment violation. *See, e.g.*, *Matthews v. Murphy*, No. 90-35458, 1992 WL 33902, at *4 (9th Cir. Feb. 25, 1992) (holding that an inmate's allegations that he was deprived of a towel, toothbrush, toothpowder, comb, soap, and other personal hygiene

items for approximately 34 days did not rise to the level of a constitutional violation); *Crump v. Janz*, No. 1:10-cv-583, 2010 WL 2854266, at *4 (W.D. Mich. July 19, 2010) (concluding that the denial of a toothbrush and toothpaste for 35 days constituted a mere temporary inconvenience); *Robertson v. McRay*, No. 03-22823-CIV, 2006 WL 2882502, at *7 (S.D. Fla. July 28, 2006) (finding that the failure to provide indigent kits containing hygiene items and envelopes, stamps and paper more than half the time over a two-year period did not violate the Eighth Amendment). Here, Plaintiff fails to set forth any facts regarding the length of time he was allegedly denied hygiene items. Thus, at most, Plaintiff has alleged a temporary inconvenience that does not rise to the level of an Eighth Amendment violation.

Moreover, despite Plaintiff's assertion that he did not receive a pillow for some time while at DRF, he does not allege that he was not provided with sheets or other bedding, or that he suffers from a medical condition which required use of a pillow. The Eighth Amendment "does not mandate comfortable prisons." *Rhodes*, 452 U.S. at 349. Plaintiff does not allege that he suffered any pain or illness due to his lack of a pillow or that he was at any risk of serious harm. Therefore, Plaintiff's claim that he was denied a pillow does not rise to the level of an Eighth Amendment violation.

In any event, Plaintiff alleges no facts from which the Court could infer that Defendants Rydahl, Cook, Edlinger, Eerdsman, and Schultz were personally responsible for denying Plaintiff hygiene items and a pillow. Moreover, Plaintiff's complaint is devoid of any allegations suggesting that he faced harm or a risk of harm arising from the alleged denial of any hygiene items and the pillow. *See Flanory v. Bonn*, 604 F.3d 249, 254 (6th Cir. 2010) (recognizing that the objective component of the Eighth Amendment test is typically not met by temporary deprivations that result in no physical injury); *James v. O'Sullivan*, 62 F. App'x 636, 639 (7th Cir. 2003) (holding that a

49-day denial of a comb, deodorant, and cleaning supplies, none of which jeopardized the prisoner-plaintiff's health, failed to satisfy the objective component of an Eighth Amendment claim); *Penrod v. Zavaras*, 94 F.3d 1399, 1406 (10th Cir. 1996) (holding that a 69-day denial of toothpaste may constitute a constitutional deprivation if plaintiff had to be treated by a dentist for bleeding and receding gums and tooth decay); *Holder v. Merline*, No. Civ.A. 05-1024 RBK, 2005 WL 1522130, at *6 (D.N.J. June 27, 2005) (concluding that a three-week deprivation of a toothbrush and sneakers does not implicate the Eighth Amendment where no physical effects resulted).

Here, Plaintiff's repeated assertions that he was denied hygiene items and a pillow, without any allegations that he suffered harm or a risk of harm, are simply too conclusory to rise to the level of an Eighth Amendment violation. Accordingly, Plaintiff's Eighth Amendment claims premised upon a lack of hygiene supplies and a pillow are properly dismissed.

### F.    Fourteenth Amendment Claims

#### 1.    Handling of Grievance

In his complaint, Plaintiff suggests that Defendant Schultz falsified the investigation summary in a response to Plaintiff's grievance concerning Defendant Edlinger's use of a racial slur. However, various courts have repeatedly held that there exists no constitutionally protected due process right to an effective prison grievance procedure. *See Hewitt v. Helms*, 459 U.S. 460, 467 (1983); *Walker v. Mich. Dep't of Corr.*, 128 F. App'x 441, 445 (6th Cir. 2005); *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003); *Young v. Gundy*, 30 F. App'x 568, 569–70 (6th Cir. 2002); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (collecting cases). Moreover, Michigan law does not create a liberty interest in the grievance procedure. *See Olim v. Wakinekona*, 461 U.S. 238, 249 (1983); *Keenan v. Marker*, 23 F. App'x 405, 407 (6th Cir. 2001); *Wynn v. Wolf*, No. 93-2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28, 1994). Thus, because Plaintiff has no liberty interest in the grievance process,

any inadequate response to Plaintiff's grievance by Defendant Schultz did not deprive Plaintiff of due process.

### 2.    Issues Regarding Missing Property

Throughout his complaint, Plaintiff avers that Defendants Eerdsman, Cook, Rydahl, Edlinger, and Schultz took no action regarding Plaintiff's complaints concerning his missing items of property. As an initial matter, Plaintiff has not set forth any facts suggesting that any of these individuals were personally involved in the deprivation of Plaintiff's property.

In any event, Plaintiff's Fourteenth Amendment due process claims regarding the deprivation of his property are barred by the doctrine set forth in *Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled in party by Daniels v. Williams*, 474 U.S. 327 (1986). Under *Parratt*, a person deprived of property by a "random and unauthorized act of a state employee," *id*. at 541, including "the unauthorized failure of agents of the State to follow established state procedure," *id*. at 543, have "not alleged a violation of the Due Process Clause of the Fourteenth Amendment," *id*., where "[t]he [s]tate provides a remedy to persons who believe they have suffered a tortious loss at the hands of the [s]tate," *id*., and the state "remedies provided could have fully compensated the [plaintiff] for the . . . loss he suffered . . . they [can be] sufficient to satisfy the requirements of due process." *See id.* at 544.

Where the state provides such a post-deprivation remedy, the plaintiff must plead and prove the inadequacy of the remedy. *See Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. 1995) (explaining that "a procedural due process claim will not be stated unless the plaintiff pleads and proves that his available state remedies are inadequate to redress the wrong"). Plaintiff has not alleged that state post-deprivation remedies are inadequate. Moreover, state post-deprivation remedies are available to him. Michigan law authorizes actions in the Court of Claims asserting "any claim or demand, statutory or constitutional, liquidated or unliquidated, ex contractu or ex

delicto, or any demand for monetary, equitable, or declaratory relief or any demand for an extraordinary writ against the state or any of its departments or officers . . . ." Mich. Comp. Laws § 600.6419(1)(a). Moreover, the Sixth Circuit has held that Michigan provides adequate post-deprivation remedies for deprivation of property. *See Copeland*, 57 F.3d at 480. Here, Plaintiff has not alleged any reason why a state-court action would not afford him complete relief for the deprivations he suffered of his property. Accordingly, Plaintiff's Fourteenth Amendment due process claims premised upon the deprivation of his property are also properly dismissed.

### G.    Violations of MDOC Policy

Throughout his complaint, Plaintiff suggests that the DRF Defendants committed numerous violations of MDOC policy. The Court will liberally construe these references as an attempt to assert claims under § 1983 for the violation of MDOC policy. However, claims under § 1983 can only be brought for "deprivations of rights secured by the Constitution and laws of the United States." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982). Section 1983 does not provide redress for a violation of a state law. *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994). Therefore, Plaintiff's assertions that the DRF Defendants violated MDOC policy fail to state a claim under § 1983.

Furthermore, "[w]ithout a protected liberty or property interest, there can be no federal procedural due process claim." *Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 519 (6th Cir. 2007) (citing *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 579 (1972)). Courts have routinely recognized that a prisoner does not enjoy any federally protected liberty or property interest in state procedure. *See Olim*, 461 U.S. at 250; *Laney v. Farley*, 501 F.3d 577, 581 n.2 (6th Cir. 2007); *Brody v. City of Mason*, 250 F.3d 432, 437 (6th Cir. 2001). Thus, Plaintiff's allegations that the DRF Defendants violated MDOC policy fail to raise a cognizable federal claim, and Plaintiff's § 1983 claims regarding the violation of policy will be dismissed.

## Conclusion

Having conducted the review required by the PLRA, the Court determines that Defendants Terry Wilkins, S. Kowalski, Tracie Hill, Eric Stromer, Unknown Majurin, Unknown Wilson, and any AMF employees who are mentioned in the complaint but not named as parties have been misjoined. They will be dropped from this action and Plaintiff's claims against them will be dismissed without prejudice. Plaintiff's claims against the remaining Defendants, as well as any DRF employees mentioned in the complaint but not named as parties, will be dismissed with prejudice for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons the Court concludes that Plaintiff's claims are properly dismissed, the Court also concludes that any issue Plaintiff might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). Accordingly, the Court certifies that an appeal would not be taken in good faith.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A Judgment consistent with this Opinion will be entered.


Dated:    June 20, 2025                         /s/ Jane M. Beckering
                                                Jane M. Beckering
                                                United States District Judge